## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SEKOU DOLLEH,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **SUGARHOUSE HSP GAMING, L.P.,** | **NO.  22-2744** |
| **doing business as Rivers Casino** | |
| **Philadelphia,** | |
| **Defendant.** | |

## MEMORANDUM

**HODGE, J.**                                                      **September 30, 2024**

Plaintiff Sekou Dolleh brings the above-captioned employment discrimination action against his former employer, Defendant Sugarhouse HSP Gaming, L.P., doing business as Rivers Casino Philadelphia (hereinafter, "Rivers Casino"), alleging that Rivers Casino discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), the Philadelphia Fair Practices Ordinance ("PFPO"), and the Family and Medical Leave Act ("FMLA"). Now before the Court is Rivers Casino's Motion for Summary Judgment. (ECF No. 23.) The Court has considered the submissions made in support of and in opposition to the pending motion and finds the matter appropriate for resolution without oral argument. (ECF Nos. 23–31); Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons that follow, Rivers Casino's Motion is denied.

## I.     BACKGROUND[1]

Plaintiff was hired by Rivers Casino as a full-time poker dealer on or about May 18, 2016, and was later promoted to a dual-rate supervisor on or about August 16, 2021. (ECF No. 26-2,

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

¶30.) Plaintiff suffers from diabetes and hypertension which causes him various ailments that impact his daily life and his ability to work, sometimes rendering him completely unable to work. (ECF No. 26-2, ¶¶18–24.)

Rivers Casino has an attendance policy that was written and signed by Plaintiff upon the start of his employment at the casino (hereinafter, "Attendance Policy"). (*See* ECF No. 26 at 65.)[2] Rivers Casino operates on a credit-based attendance system where full-time employees are given credits based on their tenure and deductions of those credits occur depending on various attendance-based actions. (*Id.*) The policy states that one no-call/no-show is grounds for a final written warning and a second no-call/no-show "within a rolling twelve-month period" will result in immediate termination. (*Id.*) Absences due to any approved leave, including FMLA leave, do not result in the use of credits under the Attendance Policy. (ECF No. 26 at 128, 192.)

On December 9, 2021, Plaintiff discussed with his doctor the need for him to take FMLA leave beginning on December 9, 2021, through February 18, 2021.[3] (ECF No. 26-1 at 7.) At some point in early December, after Plaintiff's discussion with his Doctor, FMLA paperwork was submitted to Defendant's third-party benefits provider, MetLife. (ECF No. 26-1 ¶¶40–46.) Plaintiff was assured by his primary care physician that the doctor's office would take care of any FMLA leave paperwork, and Plaintiff entrusted his physician to do so. (ECF No. 26-1 ¶¶62–63.) On December 9, 2021, the same day Plaintiff was to go on leave, Rivers Casino's third-party benefits administrator, MetLife, informed Plaintiff by mail that his FMLA leave was under review

---

[2] Several of the ECF filings have a header that is unreadable, restricting the court from citing with accuracy the correct ECF cite. As a result, the Court will cite to the pagination within the whole document when necessary.

[3] The record is unclear as to the exact contents of this conversation and the dates for which FMLA leave was needed and requested. On record, there are two return-to-work notices received by Plaintiff, both dated December 9, 2021. One notice states Plaintiff's leave dates as December 9, 2021, through February 9, 2021. The other notice states Plaintiff's leave dates as December 9, 2021, through February 17, 2021. (*See* ECF 26, Ex. N, Ex. Y.) However, Plaintiff's FMLA leave claim only included the dates from December 10, 2021, through February 2, 2022. This factual discrepancy remains unresolved after discovery.

(ECF No. 26, Ex. L.) Plaintiff claims that he never received this mail communication. (ECF No. 26-2, ¶45.) MetLife proceeded to mail plaintiff three additional notifications on December 13, December 20, and January 19. (ECF No. 26, Ex. M, Ex. O, Ex. P, Ex. Q, Ex. S.) He was sent a denial of his claim on February 3, 2022. (*Id.*) All U.S.P.S mail sent by MetLife to Plaintiff was addressed to his permanent address of record on file with Rivers Casino and MetLife. (*Id.*) Rivers Casino's Human Resources was made aware of Plaintiff's FMLA denial and his failure to respond to MetLife's correspondence. Thus, Rivers Casino's Human Resources reached out to Plaintiff on February 3, 2022, via phone call and email informing him that his FMLA leave was denied and requesting updates on his leave status. (ECF No. 26-2, ¶¶57–58.) In this email, Cyndi Gerst, a Human Resources representative, noted that Plaintiff had not called out for his scheduled shifts at the Casino. (*Id.*) Additionally, Ms. Gerst requested an update on Plaintiff's FMLA status in light of MetLife's denial of the claim. (*Id.*) Plaintiff did not respond to this email, nor did he answer the call or respond to the message left by Ms. Gerst. (ECF No. 26-3 at 195–97.)

Sometime in mid-February, Human Resources sent Plaintiff a 24-hour notice letter informing him that if Human Resources did not hear from Plaintiff within 24 hours that he would be terminated. (ECF No. 26-3 at 314.) On February 16, 2022, after Defendant sent the notice, Human Resources contacted Plaintiff by phone and discussed Plaintiff's leave claim. (*Id.*) Human Resources advised Plaintiff that he had not shown up to work and was not "calling out" as required under the leave policy. (ECF No. 26, Ex. W.) Additionally, HR informed him that his FMLA claim had not been approved. (*Id.*) During this conversation, Plaintiff explained that he was aware of the denial of his FMLA leave request. (*Id.*) He also admitted his failure to show up to work without calling out. (*Id.*) During that discussion, Plaintiff inquired as to whether he should return to work

on the return date specified by his doctor (February 18, 2022).[4] (*Id.*) Human Resources told Plaintiff that he should return to work since absences outside of the requested FMLA leave are marked as unexcused. (*Id.*) Human Resources also stated to Plaintiff that if or when he received his FMLA leave approval from MetLife that the attendance assessed against him would be credited back. (*Id.*)

Plaintiff returned to work on February 18, 2022, per the "return to work" notice received from his physician. (ECF No. 26-3 at 199.) Upon his return, Plaintiff had an in-person meeting with Human Resources. (ECF No. 26-3 at 366, Ex. X.) During this meeting, as memorialized by email, Plaintiff informed Human Resources that he "was going to work to get everything taken care of" to which Human Resources responded that they were "going to give him until early next week to see if anything gets updated." (*Id.*) On February 22, 2022, Plaintiff signed an Attendance Notification form acknowledging dates that he took as FMLA requested leave and dates that Plaintiff did not call out and did not show up to work. (ECF No. 26, Ex.NN.) It is unclear from the record which of these dates were covered by Plaintiff's FMLA leave claim(s) and which were not;[5] Moreover, while Plaintiff does not recall the Attendance Notification form document, it bears his signature. (ECF No. 26-3 at 201–02.)

On February 24, 2022, Plaintiff submitted a second, separate FMLA leave claim for the period between December 10, 2021, and February 18, 2022, which encompassed an additional two-week period from February 3, 2022 – February 18, 2022, beyond what was originally requested (December 10, 2021 – February 2, 2022). (ECF No. 26 at 11.) This leave request was

---

[4] Plaintiff received a "return to work" notice from his doctor in early December advising Plaintiff that he could return to work on February 18, 2022 (taking the date from the second return to work notice). The Court notes that the record indicates Plaintiff's initial FMLA leave claim was only valid for the dates between December 10, 2021, and February 2, 2022. (ECF No. 26, Ex. DD.)

[5] There were multiple FMLA claims submitted for multiple dates and the record does not resolve the dispute between which claims are accurate and which are not.

later marked as "abandoned" for unknown reasons and by unknown persons on March 2, 2022. (ECF No. 26, Ex. BB, Ex. HH.) Plaintiff's return to work form, issued by his physician on December 9, 2021, included a period encompassing Plaintiff's entire absence (December 10, 2021, through February 17, 2022).[6] (ECF No. 26, Ex. N.) It is unclear from the record why there are separate leave requests with separate dates requested for the FMLA leave.

In early March, Human Resources still had not received any paperwork from Plaintiff and began reviewing Plaintiff's attendance for possible termination. (ECF No. 26-3 at 314.) Human Resources did not review Plaintiff's paperwork,[7] did not contact his primary care physician, did not have a conversation with Plaintiff, and did not contact MetLife prior to their decision to terminate Plaintiff. (ECF No. 26-3 at 314–15.) Plaintiff was terminated on March 9, 2022. (ECF No. 26, Ex. GG.) Human Resources admits that were Plaintiff to have received approval for his FMLA leave he would not have been assessed attendance credits and therefore would not have been terminated for attendance. (ECF No. 26-3 at 316.)

Plaintiff alleges that he was discriminated against on the basis of his disability and because of his request to take FMLA leave. Plaintiff bases his claim on the temporal proximity between the leave and adverse action taken, a continuous animus throughout his leave and prior to his termination, and Rivers Casino's unwillingness to give Plaintiff an opportunity to remedy defects in his leave claim. Defendant Rivers Casino alleges that Plaintiff was fired for violation of the attendance policy, specifically, Plaintiff's failure to call out for several weeks during the period of his requested FMLA absence.

---

[6] The Court once again notes the discrepancy between the two return to work notices. (*See* ECF No. 26, Ex. N, Ex. Y.)

[7] There is a dispute on the record as to whether Defendant had access to these records through MetLife or through Plaintiff himself.

## II.     LEGAL STANDARD

A motion for summary judgment must be denied unless the moving party is able to show "no genuine dispute as to any material fact" and that the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility" of identifying the portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute is defined as one in which a jury could reasonably find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 447 U.S. 242, 248 (1986). In assessing materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

When the defendant moves for summary judgment, "the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to her case." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The summary judgment standard requires the court to view the evidence in the light most favorable to the non-moving party, including all justifiable inferences. *Anderson,* 447 U.S. at 255. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 248. If the court finds that any factual issues exist that could be reasonably resolved for either party, and thus requires the presence of a fact finder, then summary judgment must be denied. *Id.* at 250.

## III.     DISCUSSION

This case focuses on three key questions regarding the Plaintiff's request for FMLA leave: (1) What FMLA paperwork was transmitted, (2) Who was in possession of that paperwork, and (3) When was that paperwork received. Upon a thorough review of the record, those questions

6

remained unanswered, and the factual record is unclear. Without clarity of those three questions, there are genuine disputes of material fact on the record appropriate only for a factfinder to resolve and summary judgment is therefore not appropriate.

### A.  ADA, PHRA, and PFPO Claims

i.      Discrimination Claims

The Americans with Disabilities Act provides employee protections against unlawful discrimination based off a qualifying individual's disability. A plaintiff presents a *prima facie* case of discrimination under the ADA[8] by demonstrating: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employers; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Tech., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Rivers Casino does not dispute that Plaintiff was disabled nor that he was otherwise qualified to perform the essential functions of his position as a dual-rate poker supervisor. (ECF No. 23, n. 3.) Therefore, the only question is whether Plaintiff suffered an adverse employment decision as a result of discrimination. *Id.* Under the *McDonnell Douglas* framework, the Plaintiff must first establish a *prima facie* case of disability discrimination; if Plaintiff succeeds, the burden shifts to the Defendant to offer evidence of a legitimate, nondiscriminatory reason for the action.[9] *McDonnell Douglas Corp. v. Green*, 411 U.S. 793 (1973); *Mercer v. S.E. Pa. Transit Auth.*, 26 F. Supp. 3d 432, 445 (E.D. Pa. 2014). If the Defendant

---

[8] Courts within the Third Circuit have held that PHRA and PFPO claims have been interpreted in a similar fashion as the ADA and, therefore, the Court will conduct one analysis that will apply to ADA, PHRA, and PFPO claims. *Ahern v. Eresearch Tech, Inc.*, 183 F. Supp. 3d 664, 668–69 (E.D. Pa. 2016) (citing *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996); *Joseph v. Cont'l Airlines, Inc.*, 126 F. Supp. 2d, 376 n.3 (E.D. Pa. 2000)).
[9] Plaintiff can prove disability discrimination by either direct evidence or circumstantial evidence. A claim is only assessed under the *McDonnell Douglas* framework if Plaintiff uses circumstantial evidence to prove their claim. *Monaco v. Limestone Veterinary Hosp.*, 152 F. Supp. 3d 253, 260 (D. Del. 2016). Plaintiff provides no direct evidence of discrimination here but relies on circumstantial evidence, therefore, we apply the *McDonnell Douglas* burden-shifting framework.

meets this burden, the Plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve [defendant's] articulated legitimate reasons." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 2012 WL 3140350, at *6 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

To prove that Plaintiff was fired as a result of his disability, he must show that his disability "was a determinative factor" in Rivers Casino's decision to terminate him. *Campo v. Mid-Atlantic Packaging Specialties, LLC*, 564 F. Supp. 3d. 362, 380–81 (E.D. Pa. 2021). Plaintiff alleges that Defendant terminated Plaintiff after discovery of Plaintiff's disability and his exercise of FMLA-guaranteed rights. Here, there is a genuine dispute as to whether Plaintiff's disability was a determinative factor in Defendant's decision to terminate him, therefore, this claim survives as a matter of law. *See Jakomas v. City of Pittsburg*h, 342 F. Supp. 3d 632, 652 (W.D. Pa. 2018) (holding that conditions being worsened after return from medical leave could qualify as evidence of disability discrimination sufficient to survive the summary judgment stage). This case is, in some ways, similar to *Jakomas. Id.* Much like the Plaintiff in *Jakomas*, Plaintiff returned from his medical leave where his conditions of employment had deteriorated. Specifically, Plaintiff was terminated.

As stated above, because there are disputes of material fact, there are three questions remaining after a review of the record that only a reasonable fact finder is able to answer: (1) what paperwork was transmitted, (2) who received the transmitted paperwork, and (3) when was the paperwork received. As to the first question, Plaintiff alleges that his primary care physician provided full and appropriate documentation to Defendant's third-party benefits administrator and despite various efforts to submit that paperwork, Plaintiff's claim was denied. Furthermore, Plaintiff's claims to have personally delivered completed paperwork directly to Defendant but,

again, the record is unclear as to what specific paperwork was submitted and with what dates. The dates of leave requested, of particular importance, is a material fact because it dictates what notice Defendant was given as to Plaintiff's taking of FMLA-qualifying absences, excusable under the Casino Attendance policy. Defendant's assertions are more conclusory, as they allege that they were relying on MetLife to handle the entire claims process. While Defendant follows up with Plaintiff at various times, Rivers Casino has made it clear that they were not the ones in charge of denying/approving Plaintiff's FMLA leave. Regardless, what paperwork was actually transmitted remains unanswered. Did Plaintiff's physician submit full and complete paperwork? Did MetLife receive this paperwork? Did Plaintiff personally hand Defendant paperwork and if so, what did it contain—was it a complete submission? These are all material facts that the record remains nebulous. The vacancy of answers to these questions inhibits the Courts from granting the Defendant's motion as the Court would have to entertain supposition or guesswork in order to do so. Thus, it is inappropriate for this matter to be resolved by summary judgment and should be determined by a factfinder who can evaluate the discrepancies of these material facts at issue.

As to the second question of who received the paperwork, the record is also unclear. This begs the question of whether Defendant was aware of Plaintiff's specific disability. But we need not answer this question since they were indisputably aware that Plaintiff had a disability because they had access to MetLife's summary of claims. (ECF No. 26-3 at 316.) "[E]ven without a specific name attached to [plaintiff's disability]," Defendant can still engage in discriminatory behavior and Plaintiff can satisfy their burden of establishing a *prima facie* case of disability discrimination. *Perry-Hartman v. Prudential Ins. Co. of America*, 2021 WL 3077551, at *10 (E.D. Pa. 2021). There is conflicting information as to what paperwork or information Defendant was in possession of. The record supports the fact that Defendant had access to some information through a MetLife

portal, but the record is vague and contradictory as to what exact information is visible. This is another material fact that is in genuine dispute in this case. If Defendant was aware of all the details of Plaintiff's FMLA claim and terminated him despite full knowledge of FMLA-qualifying absences and paperwork being turned in, a reasonable fact finder could find that Plaintiff meets their *prima facie* burden. Again, these are not factual discrepancies for the Court to opine on, only a fact finder would be able to do so.

Finally, the timing of the knowledge, if any, the Defendant had of Plaintiff's FMLA leave paperwork is a material fact of dispute on the record. If Defendant was aware of the Plaintiff's FMLA leave, disability, and absences prior to Plaintiff's termination then, once again, Plaintiff has met their burden of establishing a *prima facie* case. Plaintiff claims that, after being informed that there were issues with his paperwork, he made multiple attempts to remedy the defect, including handing in documents personally to Defendant. Plaintiff also claims that information was transmitted to MetLife by Plaintiff's primary care physician multiple times throughout the span of his FMLA leave. Defendant claims that they never received the specific paperwork and only relied on MetLife's disposition of the claim. Because the record is unclear as to when this transmission of information was done, it is inappropriate for the Court to resolve this factual dispute and it must be given to a fact finder to decide.

While Defendant alleges that they terminated Plaintiff because of his violation of the Casino attendance policy, the unanswered questions regarding Plaintiff's FMLA paperwork create a genuine dispute of fact as to whether Plaintiff was terminated because of his disability. A reasonable fact finder could find that Defendant was aware of Plaintiff's disability, that they had access to Plaintiff's paperwork requesting FMLA leave for the time frame of the alleged attendance policy violations, and despite efforts on the part of the Plaintiff to remedy any FMLA defects, he

was terminated. This Court is not tasked with resolving these factual discrepancies and the fact that they exist means, as stated above, that this matter is not appropriate for disposition through summary judgment. "The inquiry at summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *McCarty v. Marple Tp. Ambulance Corps.*, 869 F. Supp. 2d 638, 650 (E.D. Pa. 2012). Plaintiff's burden to establish a *prima facie* case is not an onerous one. *Id.* at 646. Plaintiff's allegations that he was terminated shortly after taking FMLA leave and shortly after the Defendant discovered Plaintiff's disability is sufficient to satisfy this *prima facie* burden as there are material facts that remain unresolved.

Because Plaintiff has presented a *prima facie* case of discrimination under the ADA, and Rivers Casino has presented a legitimate, nondiscriminatory reason for Plaintiff's termination (his violation of the Attendance Policy), Plaintiff must show that Rivers Casino's "legitimate, nondiscriminatory reason for the employees'" termination is illegitimate or otherwise pretextual. *Walton v. Mental Health Ass'n. of S.E. Pa.*, 168 F.3d 661, 668 (3d Cir. 1999). More specifically, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Henderson v. Lab'y Co. of Am. Holdings*, 2023 WL 279251, at *4 (D. N.J. 2023) (citing *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). In determining whether a Defendant's reason for terminating a plaintiff is pretextual, the Third Circuit recognizes the "honest belief rule" where the "critical inquiry . . . is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge."

*Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 629 (E.D. Pa. 2017) (citing *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 153 (3d Cir. 2017)). Where in this case Defendant claims that they terminated Plaintiff for violating the Casino Attendance Policy, it is not necessary for the Court to decide whether Plaintiff violated this policy, the Court must decide whether a reasonable jury could find that the employer, in good faith, actually believed that the Plaintiff was guilty of the conduct. The Court finds that there is evidence on the record that creates a genuine dispute of fact with regard to Defendant's good-faith belief.

Defendant was aware that Plaintiff had requested FMLA leave from the moment a claim was filed with MetLife. Although it is unclear whether they received the specific paperwork from MetLife, they were at least aware that a claim had been filed. (ECF No. 26-3 at 317.) It is true that this claim remained open pending resolution for a substantial amount of time,[10] but Defendant was able to get in contact with Plaintiff after they issued their 24-hour notice and were, again, informed by Plaintiff that he was attempting to submit his FMLA paperwork but had encountered issues with MetLife. Furthermore, Plaintiff claims that on at least two occasions, he had tried to submit paperwork personally to Defendant in an effort to get his FMLA leave approved. In addition to the FMLA documents that Plaintiff personally handed to the Defendant, it is also unclear whether Defendant had access to the documents Plaintiff submitted to MetLife. The record, as it stands, would allow a reasonable fact finder to conclude that Defendant was in fact aware of Plaintiff's active FMLA leave, including the dates and reasons for the claim, and terminated Defendant in spite of that knowledge, even after requesting additional documentation from Plaintiff. This evidence on the record would allow a reasonable jury to conclude that Defendant's stated reasons

---

[10] The record is silent as to MetLife's process for denying and approving claims. The record seems to infer that a "denial" is not a permanent denial and gives a claimant the opportunity to remedy, as evidenced through multiple correspondences from MetLife to Plaintiff.

for terminating Plaintiff were not their "honest belief" because they were on sufficient notice that FMLA qualifying leave was being requested. Alternatively, a reasonable fact finder deliberating after receiving all the factual information could determine the opposite, and that the Defendant's basis for the actions taken were legitimate and based on their honest belief. This decision is not appropriate for the Court to make at this stage.

      ii.      Failure to Accommodate Claims

An employer commits unlawful discrimination under the ADA if the employer "does not make reasonable accommodations." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999). To establish this claim, Plaintiff must show that (1) he was disabled and Rivers Casino knew it, (2) he requested an accommodation or assistance, (3) Rivers Casino did not make a good faith effort to assist, and (4) he could have been reasonably accommodated. *Gardner v. SEPTA*, 410 F. Supp. 3d 723, 741 (E.D. Pa. 2019). The ADA regulations also state that it may be necessary for the employer to initiate an informal, interactive process with the employee in need of an accommodation. 29 C.F.R. § 1630.2(o)(3); *Taylor*, 184 F.3d at 311. A request for FMLA leave may qualify, under certain circumstances,[11] as a request for reasonable accommodation under the ADA. *Capps v. Mondelez Glob., LLC.*, 847 F.3d 144, 156 (3d Cir. 2017). An employer "discriminates against a qualified individual with a disability when the employer does not make reasonable accommodations to the known physical or mental limitations of the individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306

---

[11] Courts have held the definite leaves of absence are reasonable accommodations while indefinite leaves are subject to more scrutiny. *See Dogmanits v. Cap. Blue Cross*, 413 F. Supp. 2d 452, 460–61 (E.D. Pa. 2005) ("leave time must enable the employee to perform his or her essential job duties *in the near future*. . . . The weight of the authority in the Third Circuit, as well as other Circuits, clearly establishes that a leave of absence for an indefinite duration is not a reasonable accommodation.) (emphasis in original) (citations omitted).

(3d Cir. 1999). Failure to accommodate claims, unlike discrimination claims, do not require that an employer's action be motivated by discriminatory animus directed at the disability. *Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573, 595 (E.D. Pa. 2017). Summary judgment on failure to accommodate claims should only be granted "in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly." *Id.* (citing *Walton v. Mental Health Ass'n of S.E. Pa.*, 168 F.3d 661, 670 (3d Cir. 1999)).

The record supports the fact that Plaintiff requested an accommodation in the form of FMLA leave. Plaintiff's requested FMLA leave would qualify as a reasonable accommodation because of its definite nature. Several courts in this District have noted that leave requests, as long as they are definite, may constitute a reasonable accommodation. *See Capps*, 847 F.3d at 156–57; *Reyer*, 243 F. Supp. 3d at 597. Defendant was aware that Plaintiff requested FMLA leave and was aware of at least some paperwork that was submitted on behalf of Plaintiff regarding that leave. As discussed above, there are disputed facts as to what paperwork was submitted, who received it, and when was it received. Furthermore, there are facts on the record to support Plaintiff's contention that Defendant did not engage in a good faith process by which to accommodate Plaintiff. Defendant spoke to Plaintiff two times during the three months that Plaintiff was on leave. At no point during these discussions did Defendant inform Plaintiff that his job was at risk (aside from telling him that he needed to respond to their 24-Hour Notice), nor did they ever attempt to assist him in getting his paperwork turned in.[12] Despite assurances by Plaintiff that he was working on getting his paperwork turned in, Defendant terminated Plaintiff without notice.

---

[12] The Third Circuit has held that a reasonable accommodation includes the "employer's reasonable efforts to assist the employee and to communicate with the employee in good faith." *Mengine v. Runyon*, 114 F.3d 415, 416 (3d Cir. 1997) (discussing reasonable accommodations and good faith within the context of the Rehabilitation Act); *see also Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 149 (3d Cir. 1998) (discussing good faith within the context of the ADA); *Garner v. Sch. Dist. of Phila.*, 63 F. Supp. 3d 483, 487–88 (E.D Pa.) (same).

14

The reported lack of communication and good-faith discussions surrounding Plaintiff's accommodation request could permit a reasonable juror to conclude that Defendant failed to accommodate Plaintiff's disability.

    iii.    Retaliation Claims

In order to make a *prima facie* case of retaliation, Plaintiff must show (1) he was engaged in a protected activity, which can include informal protests of discriminatory employment practices such as making complaints to management, (2) adverse action was taken by the employer either after or contemporaneous with the employee's protected activity, and (3) a causal connection between the protected activity and the adverse action. *Kacian v. Postmaster Gen. of the United States*, 653 F. App'x 125, 128 (3d Cir. 2016). This mirrors the standard for retaliation clams under Title VII. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494 (3d Cir. 1997). An FMLA leave request is a protected activity for the purposes of a retaliation claim under the ADA. *Mascioli v. Arby's Rest. Grp, Inc.*, 610 F. Supp. 2d 419, 448–49 (W.D. Pa. 2009).

It is not necessary for an FMLA leave to be approved in order for an employee to assert FMLA rights. *See Budhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245, 255 (3d Cir. 2014) ("A reading of the statute that denies all rights that the FMLA guarantees until the time that an employer designates the employee's leave as FMLA would be illogical and unfair."). "[I]t is the time that an employee invokes his rights under the FMLA that matters, not when his or her employer determines whether the employee's leave is covered by the FMLA." *Id.* In the present case, Plaintiff had an outstanding FMLA leave claim at the time that he was fired. Defendant's assertion that because the FMLA leave was not approved while Plaintiff was on leave is irrelevant. It is indisputable that Plaintiff invoked his FMLA rights, and he was fired after he invoked these

rights. There remains genuine dispute as to material fact regarding Plaintiff's retaliation claim that only a fact finder may decide and, therefore, this claim survives summary judgment.

**B. FMLA Claim**

There are two claims that a plaintiff may assert pursuant to the FMLA: retaliation and interference. Plaintiff argues that he was retaliated against by Defendant for taking FMLA leave. Plaintiff further argues that Defendant interfered with Plaintiff's FMLA rights by failing to provide adequate time to remedy defects in Plaintiff's FMLA claim.

a. Retaliation

To prevail on a FMLA retaliation claim, Plaintiff must prove that (1) he invoked his right to FMLA qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 2012 WL 3140350, at *6 (3d Cir. 2012). Neither side disputes that Plaintiff suffered an adverse employment decision, and a reasonable jury could conclude that Plaintiff gave notice to Rivers Casino about his request for FMLA leave through MetLife. The only issue to consider is whether the adverse action in this case was *causally related to* the invocation of rights. Plaintiff claims that his termination was causally related to his FMLA rights because of the temporal proximity between his invocation of rights and his termination. The Court recognizes that when "temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality and defeat summary judgment." *Id.*, at *10 (citing *LeBoon v. Lancaster Jewish Cmty. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). There is no bright line rule as to what temporal proximity is considered "unduly suggestive," but courts have found anywhere from two days to three weeks as being unduly suggestive. *Id.* (collecting cases).

16

Plaintiff returned from his leave on February 18, 2022, and was subsequently fired on March 9, 2022. This is a period of 19 days—less than three weeks after Plaintiff returned from leave. A reasonable fact finder could determine this time frame to be unduly suggestive. Even if temporal proximity was not sufficient, Defendant's reasons for termination included absences encompassed by Plaintiff's FMLA leave. Just as in *Lichtenstein*, where the court held that an employer's consideration of an employee's absence during their FMLA leave as a negative factor in the decision to terminate that employee was enough to establish a *prima facie* case, Defendant's consideration of Plaintiff's FMLA-qualifying absences as listed in Plaintiff's FMLA leave claim would support an FMLA retaliation claim. 2012 WL 3140350, at *10–11. There is sufficient evidence for a fact finder to potentially conclude that Defendant's decision to terminate Plaintiff was triggered by Plaintiff's FMLA qualifying absences and therefore Plaintiff has met their *prima facie* burden. The *McDonnell Douglas* burden shifting framework as it pertains to Defendant's proffered legitimate reasons for terminating Plaintiff are discussed above and the Court incorporates that analysis here, holding that a reasonable fact finder could conclude that Defendant's reasons for terminating Plaintiff were pretextual. *See supra* A.i.

      b.  Interference

In order for Plaintiff to succeed on a claim for interference under the FMLA, he must show that (1) he was entitled to take FMLA leave, and (2) Rivers Casino denied his right to do so. *Lichtenstein*, 2012 WL 3140350, at *15. An interference action "is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Freeman v. Phila. Hous. Auth.*, 2013 WL 3761274, at *14 (citing *Callison v. City of Phila.*, 430 F.3d 117, 120 (3d Cir. 2005)). In cases where the factual basis for Plaintiff's FMLA retaliation and interference claims follow the same factual basis, a Court may apply the same

reasoning of a retaliation claim to an interference claim and therefore, as with Plaintiff's retaliation claim, the Court finds that Plaintiff has met their burden with respect to their interference claim. *See Lichtenstein*, 2012 WL 3140350, at *15.

IV.     **CONCLUSION**

For the reasons set forth above, the Court finds that summary judgment is not appropriate in this case. Accordingly, Defendant's Motion for Summary Judgment is DENIED. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**

18